IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD M. SMALARZ, | ) | |
| Plaintiff, | ) ) ) | No. 04 C 7439 |
| v. | ) ) | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) | Magistrate Judge Maria Valdez |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff Bernard M. Smalarz's claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, Smalarz's Motion for Summary Judgment or Remand [Doc. No. 11] is granted in part and denied in part; and the Commissioner's Motion for Summary Judgment [Doc. No. 17] is denied. The Court hereby vacates the ruling of the Administrative Law Judge and finds that this matter should be remanded for further proceedings.

## PROCEDURAL HISTORY

Smalarz applied for Title II DIB alleging disability due to back and heart conditions, with an onset date of September 3, 1996. (R. 68-71, 82.) The application was denied initially on July

---

[1] Commissioner Michael J. Astrue is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

1

14, 2000 and upon reconsideration on January 22, 2001. (R. 24-29, 36-38.) Smalarz filed a timely request for hearing on February 7, 2001, and the hearing was held before an Administrative Law Judge ("ALJ") on October 16, 2001. (R. 39-42, 288-323.) Smalarz appeared and testified in person at the hearing, and he was represented by counsel. (R. 288-323.) Mark Oberlander, M.D., testified as a medical expert, and Christopher Yep testified as a vocational expert. (*Id.*) In a decision dated December 28, 2001, the ALJ found Smalarz not disabled within the meaning of the Social Security Act and denied his application for benefits, finding that Smalarz has the residual functional capacity to perform a significant number of jobs existing in the State of Illinois, though not the full range of light work. (R. 16-23.) The Social Security Administration ("SSA") Appeals Council denied Smalarz's request for review on September 24, 2004, leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). (R. 5-7.)

## FACTUAL BACKGROUND

### A. Background

Smalarz was born on September 22, 1952 and was 49 years old at the time of the hearing. (R. 69.) He was divorced with no minor children. (*Id.*) He had an eleventh-grade education and work experience as a truck driver from January 1982 until September 1996. (R. 83, 88.) On October 12, 1993, Smalarz was diagnosed with an extruded herniated nucleus pulposus at L5-S1, and he underwent a left L5-S1 hemilaminectomy and an L5-S1 diskectomy with an epidural fat graft. (R. 108-09.) Smalarz went back to work one and a half years after the surgery, but he was subsequently reinjured at work. (R. 193.) Smalarz stopped working due to his back condition and claimed disability beginning on September 3, 1996. (R. 82.)

2

B. **Medical Evidence and Testimony**

1. *Medical Evidence*

    a. **Back Pain**

After Smalarz stopped working due to his back conditions, he was treated by Dr. Avi Bernstein, a neurosurgeon. (R. 120-22, 170-75, 231.) On April 23, 1997, Smalarz saw Dr. Bernstein for complaints of low back pain and parasthesia in the right foot and was diagnosed as suffering from L4-S1 diskogenic low back pain and degenerative disc disease. (R. 111, 116-17.) Dr. Bernstein performed an L4-S5, L5-S1 anterior lumbar diskectomy and an anterior spinal fusion. (R. 118-19.) Four titanium Bak cages were implanted for holding together the fused disc. (*Id.*) The follow-up examination on May 5, 1997 revealed that the cages were in excellent position, but Smalarz reported numbness and tingling sensations in his toe, fingertips, and legs at night and difficulty sleeping. (R. 173.) The re-examination on June 6, 1997 revealed that Smalarz had shown gradual improvement in his standing and walking distance; however, Smalarz reported stiffness and generalized discomfort in his low back in the follow-up on July 18, 1997. (R. 172-73.)

Smalarz began physical therapy on July 29, 1997, where he demonstrated a loss of mobility of his lumbar spine and lower extremities, making him able to sit and walk for only thirty minutes. (R. 120.) Through the physical therapy, Smalarz showed progress including increased flexibility and strength; however, Smalarz reported on August 29, 1997 that his back condition had not significantly improved or worsened as a result of his surgery and that he had experienced increasing discomfort with increased activity. (R. 121, 171.) As of October 20, 1997, Smalarz continued to have residual low back pain with radiation down his buttock and thigh. (R. 171.) He had a good range of motion, his straight leg raising was negative, and his

3

neurological exam was unremarkable. (*Id.*) On January 9, 1998, Smalarz saw Dr. Bernstein and reported recurrent symptoms of burning and pain in his lower extremities after a long walk in the mall. (R. 170.) Dr. Bernstein opined that Smalarz had done quite well with respect to his low back and that Smalarz had a stable construct of his lumbar spine. (*Id.*) Dr. Bernstein recommended a permanent light-duty restriction with a twenty-five-pound lifting limit and avoidance of repetitive bending, lifting or twisting. (*Id.*)

On June 3, 2000, Smalarz saw internist Karen Leone for a consultative examination. (R. 193.) Smalarz reported that he could only walk about 100 feet, that he could only stand about half an hour and sit for an hour, that he could not perform repetitive activities, and that his main problem was his right leg pain rather than his back pain. (*Id.*) Dr. Leone examined Smalarz both on June 3, 2000 and November 25, 2000. In both exams, Smalarz was able to get off and on the examination table unassisted and to ambulate 100 feet with a normal gait without an assistive device. (R. 194, 205.) He could walk on his toes and heels and tandem walk. (R. 195, 206.) His extremities revealed no clubbing, cyanosis and at most trace edema, with full range of motion. (R. 195, 205.) Smalarz had full range of motion of his cervical spine without tenderness, and his lumbar flexion was 60-70 degrees, extension was 15-20 degrees, and right and left lateral flexion was 30 degrees with tenderness present, without muscle spasm. (*Id.*) Smalarz's deep tendon reflexes were 2+ to 3+, and his muscle strength was full at 5/5. (R. 195, 206.)

On October 15, 2001, the day before the ALJ hearing, Smalarz saw Dr. Bernstein again, and Dr. Bernstein opined that Smalarz had significant lower back pain that would cause him to miss three to five days of work per month. (R. 231.)

### b. Heart Condition

On September 12, 1997, while recovering from back surgery, Smalarz was admitted to Good Shepard Hospital for chest pain. (R. 123.) In the emergency room, Smalarz underwent an echocardiogram which showed severe hypokinesia of the posteroseptal and inferior walls suggestive of previous myocardial infarction and coronary artery disease. (R. 123-24.) On September 16, 1997, Smalarz underwent cardiac catheterization which revealed 75% stenosis of the left main coronary artery; 60-70% stenosis of the circumflex artery; 50% stenosis of the large obtuse marginal branch; and 100% stenosis in the right coronary artery. (R. 127.) Based on those findings, Smalarz underwent coronary quadruple bypass surgery on September 17, 1997. (*Id.*) Smalarz was discharged with home oxygen therapy on September 22, 1997. (R. 128.)

On January 9, 1998, Dr. Bernstein prescribed cardiac-pulmonary rehabilitation for Smalarz. (R. 170.) On February 4, 1998, Smalarz was noted for back discomfort and right leg numbness and tingling after thirty-five minutes on a treadmill and stepper. (R. 178.) On April 2, 1998, Smalarz underwent a cardiac stress test, in which he ran on a treadmill for three minutes at 1.7 miles per hour, three minutes at 2.5 mph, and just over one minute at 3.4 mph. (R. 179.) Smalarz terminated the test due to leg pain and significant hypertensive response. (R. 180.)

On July 12, 2002, nine months after the hearing and seven months after the ALJ's decision, Smalarz was admitted to the VA Hospital for chest pain. (R. 234.) Based on the results of blood testing, echocardiogram, and angioplasty, Smalarz had stent placement in two coronary arteries. (R. 236, 239, 248, 251-52, 279.) Despite the procedure, the vein graft circumflex remained mostly occluded, and the native vessel and the right coronary artery remained occluded. (R. 279.)

5

### c. Mental Status

On November 28, 2000, Smalarz saw Robert Baker, M.D., for a consultative examination on Smalarz's mental status. (R. 207.) Smalarz reported being depressed and rated his depression an 8 on a scale of 1 to 10. (*Id.*) Smalarz described feeling worthless with decreased sleep and appetite. (R. 208.) The examination revealed that Smalarz had suicidal ideations but no plans, was oriented and in contact with reality, and was not delusional and had no hallucinations. (R. 207.) Dr. Baker concluded that Smalarz's depression was secondary to medical problems and family problems, and that Smalarz could manage his own funds if granted benefits. (R. 208.)

On January 12, 2001, State Agency psychologists reviewed the evidence of record and concluded that Smalarz had a mild degree of limitation in the following areas of functioning: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. (R. 219.) Smalarz was found to have no episodes of decompensation. (*Id.*)

### 2. *Testimony*

#### a. Smalarz

Smalarz testified that he had three to five bad days per month in which he could not do anything except lie on the couch or in bed, due to back pain. (R. 298.) He also testified that, on his bad days, he could only sit without any difficulty for ten minutes and stand without any difficulty for ten to fifteen minutes before he had to lie down and take a Vicodin, if available. (R. 299.) Smalarz's back pain traveled down the right leg and caused numbness and tingling on the bottom of the foot, and he could only walk 100 feet on a flat surface before he had to stop due to numbness in his leg. (R. 302, 305.) Moreover, Smalarz testified that he had shortness of breath and occasional chest pains as a result of his heart condition. (R. 301.) At home on a good

day, Smalarz was able to wash clothes and iron within limitations and occasionally do lawn mowing at a slow pace. (*Id.*) In addition, Smalarz testified that, about a year before the hearing, he gambled at casinos in Elgin and Aurora a couple of times per month, a couple of hours at a time. (R. 310.)

### b. Medical Expert

Mark Oberlander, Ph.D., a psychologist, testified that he had reviewed all evidence of record as well as Smalarz's testimony. (R. 313.) Dr. Oberlander opined that Smalarz had a medically determinable mental impairment but failed to satisfy the requirements of 20 C.F.R. 404, Subpart P, Appendix 1 (the "Listings"). (R. 313-14.) Dr. Oberlander testified that the only two areas in which Smalarz had at least a moderate degree of limitation were his ability to understand and remember detailed instructions and his ability to carry out detailed instructions. (R. 316.) He testified that Smalarz had no limitation in performing unskilled work. (R. 317.)

### c. Vocational Expert

Christopher Yep, a vocational expert ("VE"), testified that he reviewed all evidence of record as well as Smalarz's testimony. (R. 319.) Mr. Yep testified that, for a hypothetical person who is 43-49 years old with an eleventh-grade education and Smalarz's vocational experience; who could lift up to twenty pounds occasionally and ten pounds frequently; who could sit, stand or walk as required; who could only occasionally bend and/or twist; and who could not work at unprotected heights or operate dangerous moving machinery, there were a significant number of jobs in Illinois that this hypothetical person could perform such as cashier, inspecting, and assembly. (*Id.*) However, Mr. Yep also testified that if the hypothetical person could only walk 100 feet at a time, the number of those available jobs would decrease. (R. 320.) Moreover, if that hypothetical person could not maintain a position for an hour at a time, those

7

available jobs would be totally eliminated. (*Id.*) In addition, Mr. Yep testified that the tolerable absenteeism rate in those jobs was an average of one day per month or twelve days per year. (*Id.*)

C. **ALJ Decision**

The ALJ described Smalarz's impairment as severe within the meaning of the Regulations but not severe enough to meet the requirements or equal the level of severity contemplated for listed impairments in Appendix 1 to Subpart P, Regulation No. 4. (R. 17.) The ALJ found that Smalarz's medically determinable impairments precluded the following work related activities: lifting more than twenty pounds occasionally or more than ten pounds frequently; bending or twisting more than occasionally; performing work with or near dangerous moving machinery; and performing work at unprotected heights. (R. 22.) Based on those limitations, the ALJ found that Smalarz's residual functional capacity ("RFC") was for a limited range of light work. (*Id.*) The ALJ found Smalarz's complaints of disabling symptoms and limitations not entirely credible for several reasons: first, the objective medical evidence failed to support Smalarz's alleged disabling symptoms and limitations; second, Smalarz had been looking for jobs and would have accepted a position if the worker's compensation insurance company had been able to find one; third, though Smalarz alleged total disability, Smalarz took only over-the-counter medication for his back pain for twice a week; and fourth, he was skeptical of Dr. Bernstein's opinion one day prior to the hearing, as Dr. Bernstein had not seen Smalarz for almost four years. (R. 18-20.)

Based on the RFC assessment and the VE's testimony, the ALJ found that Smalarz was unable to perform any past relevant work. (R. 17.) On the other hand, the ALJ found that, although Smalarz's limitation prevent the performance of the full range of light work, there was

8

still a significant number of jobs existing in the State of Illinois that Smalarz could perform, such as cashier (129,117 jobs in Illinois), assembler (65,494 jobs in Illinois), and inspector (24,457 jobs in Illinois). (R. 22.) Consequently, ALJ found that Smalarz was not under a disability for purposes of Title II of the Social Security Act. (*Id.*)

## DISCUSSION

### A. The ALJ's Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulation? (4) Is the claimant unable to perform his former occupation? (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4)(i)-(v).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

9

B.  **Judicial Review**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "she must build an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("We have repeatedly stated . . . that an ALJ must 'minimally articulate his reasons for crediting or rejecting evidence of disability.'") (citation omitted).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, the ALJ may not "select and discuss only

that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

C.  **Analysis**

Smalarz contends that the ALJ's decision should be reversed or remanded for three reasons: (1) the ALJ did not give legally sufficient reasons for rejecting the treating physician's opinion that Smalarz could be expected to miss three to five days of work per month; (2) evidence of Smalarz's July 2002 hospitalization could have affected the ALJ's decision and thus warrants a remand; and (3) the ALJ improperly refused to allow Smalarz to testify about his worker's compensation carrier's inability to find him any employment.

1.  *ALJ's Disregard of Dr. Bernstein's 2001 Opinion*

The ALJ did not give weight to Dr. Bernstein's 2001 opinion, because she was skeptical of the nearly four-year treatment gap before the opinion, which was issued one day before the ALJ hearing. Smalarz claims that the ALJ's basis for rejecting Dr. Bernstein's opinion was not legally sufficient because she did not discuss the length, frequency, nature, and extent of the treatment relationship, as well as the supportability and consistency of his opinion with the other evidence in the record. Smalarz further contends that the ALJ did not point to any other medical opinion or evidence contradicting Dr. Bernstein's opinion. According to Smalarz, the ALJ should have made a reasonable effort to recontact Dr. Bernstein for clarification regarding his opinion.

The Commissioner responds that Smalarz's argument improperly blurs the distinction between "medical opinions" and "medical source opinions on issues reserved to the Commissioner." Specifically, the Commissioner points out that, under the regulations, while an ALJ may decide to adopt all of the opinions expressed in a medical source statement, "a medical

11

source statement may not be equated with the administrative finding known as the RFC assessment." (Def.'s Resp. at 10.) The Commissioner also states that the ALJ's skeptical view of Dr. Bernstein's opinion was supported by the lack of corroborative medical evidence and by Dr. Bernstein's previous opinion, in 1997 and 1998, that Smalarz was "doing reasonably well."[2] (*Id.* at 11.)

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Clifford*, 227 F.3d at 870. If a medical opinion is not entitled to controlling weight, it is given deference and must be weighed according to several factors set forth in the regulations. *See* 20 C.F.R. §§ 404.1527(d)(2)-(6) (listing relevant factors such as the length and frequency of the treatment relationship; the consistency of the opinion with the medical record; and whether the opinion relates to the source's specialty). The ALJ is required to give good reasons for the weight she gives to a treating source's opinion. *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

The Court finds that the ALJ did not properly articulate the reason she did not give any weight to Dr. Bernstein's October 15, 2001 medical opinion, in which the doctor stated that Smalarz would miss three to five days of work per month due to back pain. While the Commissioner was not obligated to give the opinion controlling weight, and while the reasons for her skepticism are understandable, she nevertheless should have analyzed the weight to be given to the opinion in light of the requisite factors. The Court will not engage in an analysis of

---

[2] The Commissioner also argues that the ALJ properly declined to give the opinion great weight because it did not include office notes or other evidence supporting his opinion. The ALJ's decision, however, did not mention this as a basis for rejecting Dr. Bernstein's opinion. Accordingly, the Court cannot consider the Commissioner's argument. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

12

all the factors, but it is notable that Dr. Bernstein had a significant treatment relationship with Smalarz, having performed his lumbar fusion surgery and provided extensive follow-up treatment. In addition, the ALJ did not point to any contradictory opinion or objective evidence in the record. Because of Dr. Bernstein's neurosurgical specialty and his extensive treatment history with Smalarz, the ALJ should have at least recontacted him for additional information and/or clarification regarding his October 15, 2001 opinion. *See* 20 C.F.R. § 404.1512(e)(1); *see also Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record," and "[f]ailure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence.").

### 2. *Sentence Six Remand*

Smalarz contends that the July 2002 records of cardiac impairment submitted to the Appeals Council entitle him to remand pursuant to sentence six of section 405(g). *See* 42 U.S.C. § 405(g) (stating that a reviewing court may remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); *Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988).

While a reviewing court may not overturn an ALJ's decision based on evidence that was not before the ALJ, it may remand the case based on a review of the evidence submitted to the Appeals Council. *See* 42 U.S.C. § 405(g); *Binion v. Chater*, 13 F.3d 243, 246 (7th Cir. 1994). For purposes of a sentence-six remand, evidence is "new" if it is "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)); *see Sears*, 840 F.2d at 399 (stating that the evidence must also not be cumulative). Evidence is material if there

13

is a "reasonable possibility" that its consideration would have changed the ALJ's decision, *id.* at 400, and the evidence "must relate to the claimant's condition during the relevant time period encompassed by the disability applicant under review." *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999). A claimant may demonstrate good cause for failure to incorporate such evidence into the record if it did not exist at the time of the administrative proceedings. *Sears*, 840 F.2d at 399.

Smalarz argues that his July 2002 medical records are new evidence, that the records could have led the ALJ to conclude that he met Listing 4.04 for ischemic heart disease, and that he had good cause for not presenting the evidence sooner because it did not exist at the time the ALJ rendered her decision. According to Smalarz, the Appeals Council erred in finding that evidence of the July 2002 hospitalization provided no basis for changing the ALJ's decision, because the evidence was comprehensive and related to his long-standing cardiac condition.

The Commissioner responds that Smalarz has not demonstrated good cause for failing to incorporate this additional evidence into the record during the administrative proceeding. The Commissioner further asserts that the July 2002 medical records were not material because Smalarz failed to show there was a reasonable possibility that the ALJ would have reached a different disposition of his disability claim if she had been presented with the new evidence. The Commissioner states that Smalarz bore the burden of demonstrating that he was under a disability before the expiration of his insured status on December 31, 2001; however, the additional evidence of cardiac impairment was irrelevant because it showed that his condition was deteriorating in 2002, thus failing to establish any correlative functional limitations during the relevant period.

The Court finds that Smalarz is entitled to a sentence-six remand because the records of his July 2002 cardiac hospitalization meet the requirements of newness, materiality, and good

cause. The records are new because they did not exist at the time of the administrative proceedings. For the same reason, Smalarz has shown good cause for failing to incorporate the new medical evidence into the record during the administrative hearing, which pre-dated the hospitalization. Finally, Smalarz has shown that the records are material, because there is a reasonable possibility that the ALJ could have found that he meets the requirements for Listing 4.04 for ischemic heart disease based on those records. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04. Furthermore, Smalarz's July 2002 medical records address a heart condition that was initially diagnosed in September 1997; therefore, the condition cannot be viewed as a new condition that was unrelated to his functional limitations during the relevant period (*i.e.*, December 31, 2001, the time period he last qualified for benefits). *See Sears*, 840 F.2d at 400-01.

### 3. *Smalarz's Testimony About His Attempts to Work*

Finally, Smalarz argues that the ALJ should have allowed him to testify about his attempts to find jobs through the insurance company's vocational expert. After his second back surgery, Smalarz attempted to find work with the assistance of a vocational expert assigned to him by the disability insurance company that was handling his workers' compensation claim. The ALJ's decision implied that Smalarz's attempts to find work were inconsistent with his claim of disability,[3] but she refused to allow Smalarz to testify about the process. Smalarz contends that the ALJ should not have used the fact that Smalarz was looking for jobs to

---

[3] In her decision, the ALJ stated: "Another reason to discount the claimant's allegations is that, according to his testimony, he has looked for work since his back surgery, but has found none. One might reasonably infer that, had the insurance company that was assisting him in this endeavor been able to find a position for him, he would have accepted it." (R.20.) However, a claimant's attempts to find employment are "relevant only to her motivation and not to whether she was, in fact, disabled." *Bartell v. Cohen*, 445 F.2d 80, 82 (7th Cir. 1971).

15

discount his allegations without letting him testify that the expert was unable to find him appropriate work.

The Commissioner responds that the ALJ appropriately refused to allow Smalarz to testify regarding his inability to find work, because the SSA is not bound by determinations made by other agencies or individuals, whose decisions are based upon different standards than those employed by the SSA. According to the Commissioner, Smalarz's worker's compensation claim involved state law and was not based on a consideration of all the evidence in the record.

The RFC assessment must be based on all of the relevant evidence in the case record, including evidence from attempts to work, and the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. SSR 96-8p. The Court concludes that the ALJ should have allowed Smalarz to testify about his attempts to find work after his second back surgery. The testimony was not offered for the purpose of showing that Smalarz could not work, but rather that the insurance company's expert was unable to find him suitable employment. Particularly where, as here, the claimant's attempts to find work were used against him, the ALJ should have allowed testimony to put that job search into context. Because evidence from attempts to work shed light on a claimant's RFC, the ALJ should have made a reasonable effort to acquire relevant evidence — in this case, simply by allowing Smalarz to testify. *See* SSR 96-5p.

## CONCLUSION

For the foregoing reasons, Smalarz's Motion for Summary Judgment or Remand [Doc. No. 11] is granted in part and denied in part; and the Commissioner's Motion for Summary Judgment [Doc. No. 17] is denied. The Court hereby vacates the ruling of the Administrative Law Judge and finds that this matter should be remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

**March 31, 2008**

**DATE:** _____

**ENTERED:**

*/s/ Maria Valdez/*

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**